**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jackie McLEOD, Defendant–Appellant.**

No. 93–6048.

United States Court of Appeals,
Eleventh Circuit.

May 26, 1995.

---

Thomas Martele Goggans, Montgomery, AL, for appellant.

Redding Pitt, U.S. Atty., Charles F. Teschner, Donald C. Rasher, David L. Allred, Asst. U.S. Attys., Montgomery, AL, for appellee.

Before KRAVITCH, ANDERSON and EDMONDSON, Circuit Judges.

KRAVITCH, Circuit Judge:

This appeal presents an issue of first impression in this circuit: whether 18 U.S.C. § 1513(a)(1), prohibiting retaliation against witnesses, applies in civil as well as criminal cases. We answer this question in the affirmative.

## I. Background

While in state prison, Jackie McLeod filed an action, pursuant to 42 U.S.C. § 1983, alleging that Houston County Deputy Sheriff Joe Watson and others had violated his civil rights. Watson testified at the ensuing trial. At the conclusion of the presentation of the evidence, the district judge granted a directed verdict in favor of Watson and the other defendants. Following the verdict, McLeod told Watson that as soon as he was released from prison, he was going to kill him. Watson reported this threat to the district judge and the Federal Bureau of Investigation. McLeod was charged with retaliating against a witness in violation of 18 U.S.C. § 1513(a)(1).

McLeod moved to dismiss the indictment on the ground that § 1513(a)(1) applied only to retaliation against witnesses in criminal proceedings. The district court denied the motion and a jury found McLeod guilty. Following the verdict, McLeod's appointed counsel, Terry G. Davis, moved for a new trial. McLeod filed a *pro se* motion to dismiss Davis as his counsel, for appointment of new counsel, and for a new trial. The district judge granted McLeod's motion to dismiss Davis as counsel and appointed James E. Bridges III to represent McLeod.

Bridges submitted briefs on the motion for a new trial, the basis of which was ineffective assistance of trial counsel. Bridges then moved to withdraw as counsel. The district court held a hearing on Bridges's motion to withdraw. Bridges testified that McLeod was abusive toward him, had repeatedly threatened to sue him, and had asked him to engage in conduct that Bridges considered to be unethical. McLeod was given the opportunity to testify at the hearing, but he refused to take an oath.

The court granted Bridges's motion to withdraw and declined to appoint new counsel, stating that McLeod's "treatment of this lawyer ... constitutes a waiver of [his] right to have counsel represent him at [the] hearing" on the motion for a new trial. The court noted that all the papers, including extensive briefs, already had been filed. Further, a legal assistant from Bridges's office remained in the courtroom to assist McLeod in finding documents. McLeod represented himself at the hearing, and the district court denied the motion for a new trial.

McLeod raises three issues on appeal: (1) whether retaliation against a witness in a

federal civil case falls within the ambit of 18 U.S.C. § 1513(a)(1); (2) whether the absence of counsel at the hearing on his motion for a new trial violated his Sixth Amendment right to counsel; and (3) whether the district court abused its discretion in denying his motion to excuse a juror for cause.

## II. *Retaliation Against a Witness in a Civil Action*

■ We review a district court's interpretation of a statute *de novo*. *See Barnett Bank of Marion County, N.A. v. Gallagher,* 43 F.3d 631, 633 (11th Cir.1995). 18 U.S.C. § 1513(a)(1) [1] provides that:

> Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—
>
> > (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document or other object produced by a witness in an official proceeding;

is subject to the punishments set forth in the statute.

The question therefore is whether a federal civil trial is an "official proceeding" for the purpose of § 1513(a)(1). We need not guess at the meaning of "official proceeding," because Congress has provided a definition. 18 U.S.C. § 1515 states:

> (a) As used in section[ ] ... 1513 of this title and in this section—
>
> > (1) the term "official proceeding" means—
> >
> > > (A) a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, a judge

of the United States Tax Court, a judge of the United States Claims Court, or a Federal grand jury;

·    ·    ·    ·    ·

When interpreting a statute, we "must assume that Congress used the words of the statute as they are commonly and ordinarily understood and must construe the statute so each of its provisions is given full effect." *United States v. McLymont,* 45 F.3d 400, 401 (11th Cir.1995). Thus, the "plain meaning of the statute controls unless the language is ambiguous or leads to absurd results." *Id.* The language of § 1515 is not ambiguous; it applies to "a proceeding before a judge or court." There is no language to suggest that a "proceeding" is limited to a criminal action. Further, punishing retaliation against witnesses in civil cases will not lead to absurd results. We thus must assume that Congress intended "official proceedings" to include both federal civil and criminal actions.[2]

We therefore hold that § 1513 prohibits retaliation against witnesses in federal civil cases. *See United States v. Markiewicz,* 978 F.2d 786, 796 (2d Cir.1992) (affirming convictions for violation of 18 U.S.C. § 1513(a)(1) in connection with assault of witness who testified in civil suit), *cert. denied,* —— U.S. ——, 113 S.Ct. 1065, 122 L.Ed.2d 369 (1993).

## III. *Motion for a New Trial*

McLeod also contends that he unconstitutionally was denied his right to counsel at the hearing on his motion for a new trial. We need not decide whether McLeod had such a right to counsel,[3] because we conclude that

---

1. The language of § 1513(a)(1) existing at the time of McLeod's conviction currently is set forth at 18 U.S.C. § 1513(b)(1).

2. Further, Congress's inclusion of the United States Claims Court, which has jurisdiction only over specified civil cases against the United States, demonstrates that Congress contemplated that "official proceedings" would include civil trials. *See* 28 U.S.C. § 1491 (jurisdiction of Court of Federal Claims).

3. Neither the Supreme Court nor this circuit has decided whether a hearing on a motion for a new

trial, based upon ineffective assistance of counsel, is a "critical stage" of prosecution to which the right to counsel attaches. For the reasons expressed, we hold that McLeod forfeited any right to counsel that he may have had. We therefore decline to resolve whether a criminal defendant is constitutionally entitled to counsel at a hearing on a motion for a new trial based upon ineffective assistance of counsel. *See Jackson v. Herring,* 42 F.3d 1350, 1358–59 n. 7 (11th Cir.1995) (declining to decide issue not necessary to resolution of case).

he forfeited any right that he may have had by virtue of his pervasive misconduct.[4]

The "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967). Nonetheless, "[t]he right to assistance of counsel, cherished and fundamental though it may be, may not be put to service as a means of delaying or trifling with the court." *United States v. Fowler*, 605 F.2d 181, 183 (5th Cir.1979),[5] *cert. denied*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980).

■ Courts thus have recognized that a criminal defendant may forfeit[6] constitutional rights by virtue of his or her actions. The Sixth Amendment right to counsel, for example, may be forfeited by a defendant's failure to retain counsel within a reasonable time, even if this forfeiture causes the defendant to proceed *pro se*. *See Fowler*, 605 F.2d at 183. Additionally, a defendant who misbehaves in the courtroom may forfeit his constitutional right to be present at trial. *See, e.g., Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Foster v. Wainwright*, 686 F.2d 1382, 1388–89 (11th Cir.1982),[7] *cert. denied*, 459 U.S. 1213, 103 S.Ct. 1209, 75

L.Ed.2d 449 (1983). A defendant who causes a witness to be unavailable for trial forfeits his right to confrontation. *See United States v. Thevis*, 665 F.2d 616, 630 (5th Cir. Unit B 1982),[8] *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). A defendant who escapes from custody during his trial waives his Sixth Amendment rights to be present and to confront witnesses during the trial. *See Golden v. Newsome*, 755 F.2d 1478, 1481 (11th Cir.1985).

■ By analogy, we conclude that under certain circumstances, a defendant who is abusive toward his attorney may forfeit his right to counsel. We now must determine whether McLeod forfeited his right to have an attorney present at the hearing on his motion for a new trial.

Bridges was McLeod's second attorney, as McLeod had dismissed his first attorney, Davis.[9] At the hearing held on Bridges's motion to withdraw, Bridges testified that he and McLeod had a telephone conversation during which McLeod was verbally abusive and threatened to harm him.[10] He further testified that McLeod had threatened, on at least four occasions, to sue him, and had attempted to persuade him to engage in unethical conduct in connection with the case.[11]

---

4. McLeod also asserts that he was denied his right to counsel as guaranteed by Fed.R.Crim.P. 44(a) and 18 U.S.C. § 3006A. Assuming that these provisions confer the right to counsel at a hearing on a motion for a new trial, we hold that McLeod forfeited that right.

5. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

6. We discuss "forfeiture" rather than "waiver" because waiver implies "an intentional relinquishment of a known right." Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure*, § 11.3, at 546 n. 4 (2d Hornbook ed. 1992).

7. In *Foster*, this court held that a defendant who persisted in interrupting the judge had forfeited his right to be present at the trial, even though the defendant was neither abusive nor violent. *Id.* at 1387–88.

8. The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), adopted

as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981,

9. Upon dismissing Davis, McLeod filed a civil suit against him, alleging "ineffective assistance of counsel."

10. Bridges testified as follows:

[McLeod] said, You crackers are setting me up. He said, I knew you were one of them crackers. He said, I knew you didn't care about me. And he said, told me several times, Don't you cross me. Don't you fuck with me. I am going to sue all of [you]. I am going to sue you and all them other lawyers in the firm. And he said, I am going to sue all them big million-dollar clients. He said, Nobody fucks with Jackie McLeod. He said, Don't worry. I am going to get even with all you crackers when I get out of here.

11. Bridges testified that McLeod had wanted "several girls that worked for him [to testify].... [T]hey would [have] testified to whatever he wanted them to testify to."

There is evidence that McLeod also asked Davis to engage in unethical activities, "such as

McLeod's behavior toward his counsel was repeatedly abusive, threatening, and coercive. Although we are troubled by the fact that McLeod was not warned that his misbehavior might lead to *pro se* representation, the court gave McLeod the opportunity to testify at the hearing held on Bridges's motion to withdraw. McLeod, however, refused to take an oath, and the judge accordingly did not allow him to testify.[12]

Following McLeod's refusal to take an oath, the judge granted Bridges's motion to withdraw. The judge again asked McLeod whether he objected to Bridges's withdrawal. At this point, McLeod asked that another attorney be appointed to represent him.

We are mindful of McLeod's request for a third attorney. In light of McLeod's behavior, however, we cannot say that the district judge erred by concluding that McLeod had forfeited this right to counsel.[13]

### IV. *Juror Impartiality*

McLeod finally argues that the district court erred in denying his motion to excuse a juror for cause. During voir dire, juror Judy Mull stated that she had known the family of the victim, Joe Watson, for fifteen years, but that Watson was merely "an acquaintance" whom she had not seen in five years. In response to questioning, Mull repeatedly and unequivocally averred that she "could be fair to both parties," and "could make a fair decision based [on] the evidence [she] hear[d]."

We review the district court's denial of McLeod's motion to excuse Mull for " 'manifest abuse of discretion.' " *United States v. Simmons*, 961 F.2d 183, 184 (11th Cir.1992) (quoting *United States v. Muller*, 698 F.2d 442, 444 (11th Cir.1983)), *cert. denied*, —— U.S. ——, 113 S.Ct. 1591, 123 L.Ed.2d 156 (1993). Because the record amply supports the conclusion that Mull could "lay aside [her] opinion and render a verdict based on the evidence presented in court," *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2891 n. 12, 81 L.Ed.2d 847 (1984), we conclude that the district court did not abuse its discretion.

### V.

In sum, we hold that § 1513(a)(1) applies to retaliation against witnesses in federal civil cases. We also hold that McLeod forfeited any right that he may have had to have counsel represent him at the hearing on his motion for a new trial. We further conclude that the court did not abuse its discretion in refusing to excuse a juror for cause. Accordingly, we AFFIRM McLeod's conviction.

---

getting the names of witnesses to add to lawsuits so that they could be considered biased ... when they would be called to testify."

12. The district judge gave McLeod numerous opportunities to take an oath and attempted to accommodate McLeod's stated religious objections to taking an oath. McLeod, however, refused even to affirm that the testimony he was about to give was the truth.

During the hearing on the motion for a new trial, held the same day as the hearing on the motion to withdraw, McLeod testified upon affirmation.

13. Our holding is limited to McLeod's forfeiture of his right to counsel at the hearing on the motion for a new trial. McLeod was appointed

counsel on appeal and at sentencing. Following the court's denial of McLeod's motion for a new trial, Mark Wilkerson was appointed to represent McLeod. He moved to withdraw nine days later. Richard K. Keith was then appointed. Keith represented McLeod through sentencing. McLeod then moved to have Keith discharged as counsel during the sentencing hearing, stating that he would rather proceed himself. The court denied the motion, but granted McLeod's motion, filed after the sentencing hearing, to dismiss Keith. This court appointed Thomas Goggans, McLeod's current counsel, to handle McLeod's appeal. Goggans's subsequent motion to withdraw was denied.